[No. 12823.  Department Two.  December 3, 1915.]

GEORGE M. RICHARDSON et al., Appellants, v.
FRANK T. HUNTER, Respondent.[1]

EVIDENCE—PAROL EVIDENCE TO VARY WRITING—AMBIGUITY. There
is an ambiguity as to whether the writer of a letter intended to bind
himself personally, making parol evidence of the actual intention
admissible, where a letter head of a corporation was used and he
signed himself as vice president of the company, but used the per-
sonal pronoun "I" in speaking of the agreement and the plural in
referring to other matters.

CORPORATIONS—STOCK—CONTRACT TO PURCHASE—VALIDITY—ESTOP-
PEL. A long explanatory letter by the vice president of a corpora-
tion in which he expressed to a discontented stockholder a willing-
ness to "enter into an agreement" to buy back the stock, without
specifying the terms of the agreement and containing no words of
present promise, is not an enforceable contract to repurchase the
stock.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered November 24, 1914, in favor
of the defendant, dismissing an action on contract, tried to
the court.  Affirmed.

E. F. Kienstra (E. E. Shields, of counsel), for appellants.
Hastings & Stedman, for respondent.

BAUSMAN, J.—Action by the Richardsons against Hunter,
tried without jury, to recover damages upon an alleged broken
promise of Hunter to buy shares of stock.  Both the promise
and the damages were denied.  From a judgment of dismissal
with prejudice, plaintiffs appeal.

The Richardsons alleged that, in December, 1911, Hunter
agreed to buy the shares at any time within a year at $1,000,
with interest from the preceding November, and that on
August 1, 1912, they tendered the shares, which he declined
to accept.  The cause was not tried until November, 1914.
What the value of the stock was at the time of tender, or be-

[1]Reported in 153 Pac. 325.

tween tender and trial, is nowhere disclosed. It is not even alleged in the pleadings. Nothing on this point appears, except that, at the time of the trial, the company was in bankruptcy with a bad outlook for shareholders; but as to when it had become bankrupt, nothing was shown. Apparently it was not bankrupt, either at the date of the alleged agreement or at that of tender, for so late as December 11, 1911, it was able to pay Mrs. Richardson dividend coupons on these shares.

The allegation of damages is general, and the prayer is for the purchase price, together with the agreed interest, less only a certain $70 received. Now this suit was neither to recover from the vendee the price of stock accepted, nor to recover payments by rescission, nor for specific performance of sale; and, as plaintiffs made neither allegation nor proof of selling the stock after its rejection, so as to charge the plaintiffs with shrinkage in value, or of their still holding the stock for defendant, a question as to the possibility of their recovering on their own showing might arise. But as this question has not been raised in the briefs before us, we need only say that it is not to be inferred, on account of the record, that we either adopt or reject what was apparently plaintiffs' theory of damages recoverable.

Coming now to the question argued here, it is plain that the lower court was right. The Richardsons based their claim upon a letter from Hunter upon a sheet bearing the title of Empire Life Insurance Company. His own name was printed in the corner as vice president of that company. But the stock involved here is that of the Columbus Securities Company, his official connection with which, if any, does not appear.

Hunter, in a long letter, addressing the plaintiffs and discussing the affairs of the Columbus Company, signed his name as "vice-president," without adding to it the title of any company. In this letter he used the singular pronoun "I" in speaking of his willingness to enter into an agreement; while, on the other hand, in referring to other matters he

used "we," and, as already stated, signed simply as vice president. This raises an ambiguity at the outset. Now we do not hold that his merely appending "vice-president" would make it certain that he did not mean to bind himself. On the other hand, that signature tends to negative the personal pronoun.

Under *Griffin v. Union Savings & Trust Co.*, 86 Wash. 605, 150 Pac. 1128, we are allowed to seek in parol proof the actual intention when such an ambiguity as this arises. Now Hunter, it appears, was not the one who had sold this stock to the plaintiffs, and whether there was a consideration for a promise to buy it back, there is apparent a lack of motive, even though he may have been connected with promoting the Columbus Company. He, for his part, vigorously denied on the stand that he had any intention of binding himself, and that the plaintiff so understood him.

But even if this letter be considered as personal, it was not a contract. It contains no words of present promise. What Hunter said in it was that he would be willing to "enter into an agreement" to buy the stock. What terms and conditions should be put into such an agreement he did not prescribe. It is a long communication to a discontented person, in which he manifestly hoped his explanations would suffice. Should these fail, he would be willing to enter into an agreement of purchase. We deem it an offer to make an agreement, rather than an agreement itself.

We may add that the behavior of the plaintiffs after the alleged promise does not tend to corroborate their assertion that such a promise was ever made. Long after the rejected tender, the wife collected through Hunter $70 in dividend or interest coupons on this stock, and we are not satisfied that the husband did not acquiesce in this, though he says it was done contrary to his desires.

The judgment is affirmed.

MORRIS, C. J., MAIN, PARKER, and HOLCOMB, JJ., concur.