[No. 20534.    Department Two.    August 25, 1927.]

ANTON SCHWAB, *Appellant*, v. GEORGE A. GETTY *et al.*, *Respondents.*[1]

[1] CORPORATIONS (146, 179)—HOLDING OWN STOCK—CONTRACTS AND INDEBTEDNESS—UNDISCLOSED AGENCY—LIABILITY OF OFFICERS. The president and secretary of a corporation are individually liable upon a contract to which they signed the corporation name and their own and as president and secretary, which recites that "Mr. S. and I both" agree to take back the stock of the corporation sold; in view of the fact that such an agreement by the corporation would be void, that it contains apt words to bind the agents individually, and intent to the contrary does not clearly appear; the contract not being a negotiable instrument governed by Rem. Comp. Stat., § 3411, relating to signatures in a representative capacity.

Appeal from a judgment of the superior court for Yakima county, Hawkins, J., entered September 4, 1926, dismissing an action on contract. Reversed.

*Joseph C. Cheney* (*Nat. U. Brown*, of counsel), for appellant.

*Frank J. Allen, Charles H. Allen*, and *I. J. Bounds*, for respondents.

[1]Reported in 258 Pac. 1035.

Holcomb, J.—Appellant sued upon an instrument reading:

"Yakima, Washington, 3-2 1923
Yakima Ave. Near Third St.

"Mr. Anton Schwab,
Roslyn, Wash.

Dear Friend Schwab:

Referring to our talk at the depot yesterday, regarding the one thousand dollars worth of stock, Mr. Summers and I both agree to take back same Jan. 1st, 1924, after that time you do not wish to keep it, providing you give us fifteen days notice.

"Yours very truly,
"Yakima Shoe Co.
"Geo. A. Getty, Pres.
"P. S. Summers, Sec."

The evidence introduced on behalf of appellant shows that, on and prior to February 28, 1923, respondent Getty and the decedent of the estate represented by the executrix, respondent herein, were the operating and controlling owners of the Yakima Shoe Company, a corporation. They desired more money to put into the business, and negotiated with appellant, already the owner of eleven shares, to put $1,000 more into the business, for which they agreed to sell him ten shares of the par value of one hundred dollars per share, and agreed with him that, if he desired his money back after January 1, 1924, they would buy it back. It is an undisputed fact that appellant made demand for the repayment of the $1,000 about a year and a half after January 1, 1924, and it was not repaid.

The trial court found that the instrument above set out was the obligation of the corporation, Yakima Shoe Company, and not the individual obligations of Getty and Summers. The action was therefore dismissed.

The errors assigned may all be grouped into the contention that the court erred in construing the instru-

ment in writing to be the obligation of the corporation and not of the individuals.

The court properly held that the written instrument fixed the liabilities of all the parties and its terms could not be altered by parol evidence. *Farmers State Bank of Newport v. Lamon,* 132 Wash. 369, 231 Pac. 952.

The record also shows that all the parties agreed that the agreement, whatever it was between the parties, should be reduced to writing before appellant would furnish the money desired; hence it only may be considered in determining and construing the contract and the intent of the parties. *Pennington & Co. v. Hedlund Box & Shingle Co.,* 116 Wash. 292, 199 Pac. 235.

The memorandum opinion of the trial judge was adopted as the findings of the court, and exceptions taken by appellant to them as findings. In the findings, the trial judge stated that a construction of the instrument itself led him to conclude that the obligation sought to be created was that of the Yakima Shoe Company; that it was signed by the corporation as formally as possible; that it recites that they will take it back; that Getty and Summers could not take it back, since they were not selling the stock, but the company was.

[1] Appellant asserts that there are three separate and distinct grounds upon which the judgment should be reversed:

(1.) That the instrument itself, by its plain terms, connotes a direct personal liability of Getty and Summers.

(2.) That, from the terms of the instrument, even if Summers and Getty did not intend to bind themselves, by the language of the instrument which contained apt words to bind the individuals, not having any authority

of the Yakima Shoe Company, they are bound themselves.

(3.)    That, upon the instrument itself, by virtue of the express terms of Rem. Comp. Stat., § 3411 [P. C. § 4091], they are liable individually, because admittedly they had no authority to sign such an instrument for the Yakima Shoe Company.

The instrument involved here is a simple contract, and not a negotiable instrument. Rem. Comp. Stat., § 3411, a part of the negotiable instruments act, reads:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; . . ."

While a negotiable instrument, under the law, is very analogous to an instrument of this character, it cannot be said to be the same. A negotiable instrument has certain characteristics, as defined in the act, which an instrument such as this does not have.

If this writing were within the negotiable instruments law, the text writers and authorities generally agree that the effect of that section is to render one signing for or on behalf of a principal, or in a representative capacity, personally liable, if he acts without authority. Crawford, Uniform Negotiable Instruments Law; Brannan's Negotiable Instrument Law; *Austin, Nichols & Co. v. Gross,* 98 Conn. 782, 120 Atl. 596; *Ryan v. Hebert,* 46 R. I. 47, 124 Atl. 657. But the negotiable instrument act has no direct application. This is not here a question of agency. It is a pure question of the interpretation of a contract and its intent.

This instrument is a contract to take back certain stock of the Yakima Shoe Company, a corporation, after January 1, 1924, and repay the purchaser the

sum of $1,000 paid for the stock. It is either a contract
of the corporation or of Summers and Getty person-
ally. If it was intended to be a contract of the cor-
poration, of course it is void, for a corporation cannot
traffic in its own stock in this state. *Kom v. Cody De-
tective Agency*, 76 Wash. 540, 136 Pac. 1155, 50 L. R.
A. (N. S.) 1073; *Brenaman v. Whitehouse*, 85 Wash.
355, 148 Pac. 24; *Duddy-Robinson Co. v. Taylor*, 137
Wash. 304, 242 Pac. 21.

Upon that situation, appellant then contends that,
since the corporation could not make the contract in
question, good faith and fair intent ought to be im-
puted to all the parties to the contract, and if the court
may do so, it must construe the contract so as to deal
fairly between the parties, and make it, if possible, a
valid contract.

Answering that contention, respondents say that it
is not the province of the court to make a contract for
the parties when no valid contract has been made.
With that contention the lower court agreed.

To support his contention, appellant cites 13 C. J.
539; *Waring v. Loomis*, 35 Wash. 85, 76 Pac. 510; *Lay
v. Bouton*, 73 Wash. 372, 131 Pac. 1153; *Crawford v.
Seattle, Renton & S. R. Co.*, 86 Wash. 628, 150 Pac.
1155, L. R. A. 1916D 732, all to the effect that it will
not be presumed that the parties intended to violate
the law; and that, when a contract is open to two con-
structions, by one of which it would be lawful, and the
other unlawful, the former must be adopted; and thus
hold that the individuals mentioned in the contract,
and who signed it as officers of the corporation, should
be held personally liable on the contract.

The cases dealing with this and similar questions
are innumerable and of infinite variety. Moreover, it
is frequently stated that each such case must depend
upon its own contract or facts. Cases are cited by both

parties which have no application to such construction as is here involved, for the reason that, as aptly stated by the trial court, as shown by the annotations accompanying the report of a case of our own (*Gavazza v. Plummer,* 53 Wash. 14, 101 Pac. 370, 42 L. R. A. (N. S.) 1), the decisions are very confusing, but most of them really rest upon a rule of evidence, in that some courts allow testimony to show who was in fact intended to be obligated, while others do not.

In this state, as shown by the cases of *Farmers State Bank v. Lamon, supra, Toon v. McCaw,* 74 Wash. 335, 133 Pac. 469, L. R. A. 1915A 590, and *Way v. Lyric Theater Co.,* 79 Wash. 275, 140 Pac. 320, all cases upon negotiable instruments, signers thereto are not permitted to show by parol evidence an intent to sign other than as shown on the face of the instrument. We did, however, in *Griffin v. Union Savings & Trust Co.,* 86 Wash. 605, 150 Pac. 1128, Ann. Cas. 1917B 267, say that it is

". . . now quite generally held, especially as to unsealed instruments, or where, as here, the use of seals has been abolished by statute, that the question is one of intention, and that the word agent, or any other word indicating a representative capacity, affixed to the name of the signer, when the intent cannot be clearly gathered from the recitals of the instrument itself, imports into the instrument such an ambiguity as to permit a resort to extrinsic evidence to determine the true intention of the parties."

We also in that case quoted with approval the following from *Pratt v. Beaupre,* 13 Minn. 187:

"The rule is, that when words which may be either descriptive of the person, or indicative of the character in which a person contracts, are affixed to the name of a contracting party, *prima facie,* they are descriptive of the person only; but the fact that they were not intended by the parties as descriptive of the

person, but were understood as determining the character in which the party contracted, may be shown by extrinsic evidence; but the burden of proof rests upon the party seeking to change the *prima facie* character of the contractor.''

In the *Griffin* case, we held that a contract of guaranty signed by one as ''manager'' on the letterhead of a bank, where the signer had no authority to sign such contract of guaranty and could not bind the bank thereby, did not bind the bank, but bound the signer only, personally, distinguishing that case from such cases as *People's Bank v. National Bank,* 101 U. S. 181, where the instrument specifically stated that ''this bank hereby guarantees the payment of this note, etc.'' We also there stated that,

''. . . the very fact that he had no such authority is some evidence that he never intended to bind the appellant by this instrument, *prima facie* his personal undertaking. *Smith v. Alexander,* 31 Mo. 193.''

That observation might be safe to apply here, where the signers of the instrument before us must be presumed to have known the law that they had no authority to bind their company by a contract to repurchase the stock.

Cases are also cited by respondents, and many cases referred to in the case notes in 42 L. R. A. (N. S.) 1, to the effect that unauthorized agents, having no authority to bind their pretended principal, cannot be held obligated personally in an action on a contract, but only in an action in tort. *Thilmany v. Iowa Paper Bag Co.,* 108 Iowa 357, 79 N. W. 261; *Jacobs v. Williams,* 85 Conn. 215, 82 Atl. 202.

In the last case cited, it was also stated, quoting from another case, that

''If the form of the contract is such that the agent personally covenants, and then adds his representative

character, which he does not, in truth, sustain, his covenant remains personal and in force, and binds him as an individual; but if the form of the contract is otherwise, and the language, when fairly interpreted, does not contain a personal undertaking or promise, he is not personally liable; for it is not his contract, and the law will not force it upon him.''

The *Jacobs* case was also very similar to this, in that it was a case brought upon a writing, wherein it was agreed that in case the buyer of certain corporate stock wished to dispose of it one year afterward, the signers would take the stock off his hands and allow six per cent interest on the money paid by him. The contract was signed ''The Glastonbury Power Co., James S. Williams, Prest., Lewis W. Ripley, Secy.'' It will be observed that the signatures are of the same nature as the signatures to the instrument before us; that is, the instrument was signed by the company, and one person signing as president, and another as secretary. It was held in that case that the transaction was a sale, and not a loan, and that the corporation only was liable, and not the individual signers of the writing. It was also held that the intent as to who should be liable must be gathered from the language of the instrument itself as a matter of legal construction. That is our rule, except as to ambiguous instruments.

The cases, with great uniformity, hold that where the real principal is disclosed as the party to be obligated, and the only party, even though the signatures may be irregular and defective, the principal will be held on the instrument. *Sun Printing & Publishing Association v. Moore,* 183 U. S. 642, 46 Law Ed. 366. In that case, a charter party was signed by one Lord, ''for the Sun Printing & Publishing Association.'' Mr. Justice White, writing the opinion, said:

"Clearly, this was a disclosure of the principal, and an apt manner of expressing an intent to bind such principal." (Citing cases.)

In the same case it was observed, quoting from another case with approval:

"The rule of law to be applied in the determination of this question is thus expressed in *Whitney v. Wyman,* 101 U. S. 392, 395, 25 L. Ed. 1050, 1051:

" 'Where the question of agency in making a contract arises there is a broad line of distinction between instruments under seal and stipulations in writing not under seal, or by parol. In the former case the contract must be in the name of the principal, must be under seal, and must purport to be his deed and not the deed of the agent covenanting for him. *Stanton v. Camp,* 4 Barb. (N. Y.) 274.'

" 'In the latter cases the question is always one of intent; . . . the meaning of the contracting parties is the agreement. Words are merely the symbols they employ to manifest their purpose that it may be carried into execution. If the contract be unsealed and the meaning clear, it matters not how it is phrased, nor how it is signed, whether by the agent for the principal or with the name of the principal by the agent, or otherwise.'

" 'The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so.' "

Respondents also cite the case of *Lynch v. McDonald,* 155 Cal. 704, 102 Pac. 918, an action by an attorney against a corporation and an individual for services rendered under a contract, in form between the corporation and the individual on one part and the attorney on the other, but signed by the individual only in his capacity as president of the corporation. It was held that the attorney could not complain because the judgment was against the corporation only.

There is a vast distinction between that case and this case. That was an action by an attorney, who undoubtedly passed upon the contract with legal skill and ability when he received it, and received it signed only by the individual as president of the corporation, and not by him in his individual capacity. It might even have been assumed that the attorney, who was acting as the legal advisor of the corporation and its principal owner, the president, prepared the contract and procured the execution thereof.

Respondents rely strongly upon the *Sun Printing & Publishing Association* case, *supra,* the *Jacobs* case, *supra,* and other like cases, which hold, of course, that "I" and "we" used in instruments, or "we" or "our" or "we agree that we will take the stock back," if the instrument is signed by the corporation, does not change the signature. But in the *Sun Printing & Publishing Association* case, *supra,* Judge White made it plain that, where the signature was for and on behalf of the corporation, it bound the latter, if the signer had the authority to make such a contract for his paper. He also went to some pains to show that the by-laws and resolutions of the corporation sufficiently authorized such a contract on behalf of the corporation to be made by the signer thereof. For that reason, it was held to be the signature of and for the company and an obligation binding it, regardless, we apprehend, of whether it would have bound the signer individually, if unauthorized.

The writing before us, however, does not use the words "I," "we" or "our," as referred to in many of the cases cited by respondents, but uses the specific words "Mr. Summers and I both agree to take back same after Jan. 1st, 1924," etc. These words are much more definite than the use of the words "I,' "we" or "our," making it plain, in our opinion, that it was in-

tended to make an agreement on the part of Summers and Getty that they would take back the stock at the time specified, and not the corporation.

The agreement in this case is more like that in the *Gavazza* case, *supra,* where the signer of the writing, Plummer, described himself as treasurer of the company in the instrument itself, but agreed for himself that he would, upon demand, accept a return of the stock and refund to the purchaser the money he had paid therefor. In that case, the late Judge Morris, writing the opinion, said:

" 'It is too well settled to need any reference to authorities to show that an agent may, by the form of the promise and manner of his signature fix upon himself a personal liability.' *Haverhill Mut. Fire Ins. Co. v. Newhall,* 1 Allen 130. The appellant has brought himself within this rule. The words of his undertaking 'I will, upon demand, accept a return of his stock and refund to him the money he has paid,' would seem to indicate, irrespective of the application of the rule, that it was his purpose and intention to become personally bound, at least to lead respondent to infer (as respondent testified) that the obligation was personal. The addition of 'Treas.' to his signature neither adds to nor detracts from that obligation; it is simply, as the courts say, *'descriptio personae.'*

"If it is desired to escape personal liability in the contract of an agent or other representative, the intention so to do must be expressed in clear and explicit language; otherwise, a personal obligation arises."

It is also true here, as appellant testified, that the obligation was personal upon the part of Getty and Summers to take the stock off of appellant's hands according to the terms of the written instrument. 2 C. J. 807, states the rule to be:

"If the contract contains apt words to bind the agent personally he may of course be held liable directly on the contract."

While the instrument is novel, we are convinced that it was intended to be the personal contract of Getty and Summers, individually, and not that of the company; that the contract contained apt words to bind them, even though they pretended to sign for and on behalf of the corporation.

The judgment of the lower court is, therefore, reversed.

TOLMAN, PARKER, and FRENCH, JJ., concur.