IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PHILLIP KAIREZ and CAROLYN KAIREZ, husband and wife, | ) ) ) | No. 30891-0-III |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| BUDGET FUNDING I, LLC, a California corporation, | ) ) ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| BENTON FRANKLIN TITLE COMPANY; WELLS FARGO FOOTHILL INC., a California corporation; and CITY OF PASCO, a municipal corporation formed under the laws of the State of Washington, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

SIDDOWAY, A.C.J. — Phillip and Carolyn Kairez brought the action below to

assert a lien against an apartment complex and to recover amounts they loaned to their

son, whose limited liability company was a one-time owner of the complex. One of the

several defendants—a lender, Budget Funding I, LLC—was granted summary judgment

dismissing the Kairezes' claims against it. The Kairezes appeal. We affirm the

dismissal.

FACTS AND PROCEDURAL BACKGROUND

In March 2006, Nick Kairez,[1] the son of Phillip and Carolyn Kairez, formed NRK Investments LLC. Nick was the sole member and manager. A month later, NRK entered into a real estate contract to purchase an apartment complex in Pasco from James and Krista Gottula. Nick executed the contract as NRK's manager but was not individually a party to the contract. The contract was recorded.

Nick's parents had loaned him $50,000 to make the down payment for the property. To memorialize the loan, Nick, individually, signed and delivered a $50,000 promissory note to his parents. A month after NRK entered into the real estate contract, Nick executed what was styled as a deed of trust on the apartment complex property to secure the promissory note to his parents. The deed of trust identified the grantor as Nick, however, and only he signed it, individually, as grantor. It too was recorded. A $90,000 "amended" promissory note in favor of Nick's parents was later executed by Nick and was recorded in April 2007. NRK was not mentioned in the original note, the amended note, or in the deed of trust.

The Kairezes continued to loan Nick money for costs associated with the apartment complex through December 2008. According to them, the total amount they

---

[1] Mr. and Ms. Kairez refer to their son as "Nick" in their briefing and we adopt that reference as well to avoid confusion between our references to him and to his father. We intend no disrespect.

2

loaned to Nick that he used to purchase, renovate, and operate the apartment complex was $149,104.30.

In 2007, NRK sought financing from Budget Funding I, LLC and offered its interest in the apartment complex as security. Budget agreed to loan NRK $263,250 with a portion of the funds to be applied first to pay off the Gottulas. The loan documents all identified the borrower as NRK and were prepared for execution by Nick as NRK's manager. When the loan closed in September 2007, the Gottulas were paid the balance of the contract price from the loan proceeds, and the earlier-executed fulfillment deed from the Gottulas to NRK was recorded, as was Budget's deed of trust from NRK.

Budget was aware of the Kairezes' deed of trust and, it contends, it intended the proceeds of its loan to NRK to be applied to satisfy amounts secured by that deed of trust before the balance was disbursed to Nick. Budget's escrow agent contacted Carolyn Kairez before the loan closing and requested a payoff amount. According to a sub-escrow agent responsible for disbursing the loan proceeds, Ms. Kairez supplied a payoff figure of $70,402 and wire instructions. When the loan closed, a slightly higher amount, $70,672, was wired to a Kairez bank account. Despite making the payment, neither the escrow agent nor Budget obtained the Kairezes' signatures on a request for reconveyance, an acknowledgment that the obligation secured by the deed of trust had been satisfied, or any other documentation that the Kairezes were relinquishing whatever interest they held in the property.

3

In April 2009, the Kairezes learned from Nick that Budget was going to begin foreclosure proceedings. The Kairezes contacted a lawyer, who requested a copy of a trustee's sale guarantee issued by Benton Franklin Title Company, also a defendant in the action below. The trustee's sale guarantee disclosed the Kairezes' deed of trust as one of the "[d]efects, liens, encumbrances or other matters affecting title," although it also revealed that title to the apartment complex was held by NRK and yet the grantor of the Kairezes' deed of trust was Nicholas Robert Kairez. Clerk's Papers (CP) at 61. The Kairezes' deed of trust was identified by the guarantee as the third numbered lien, encumbrance, or matter affecting title while Budget's deed of trust was identified as the fourth. The Kairezes construed the guarantee as establishing that their deed of trust was superior to Budget's. They did not thereafter receive a notice of the trustee's sale, but according to Ms. Kairez this did not concern them because they understood that only lienholders junior to Budget would receive notice.

The trustee's sale took place in December 2009. Budget was the successful bidder and the property was conveyed to it by a trustee's deed. In January 2011, more than a year after the foreclosure sale and more than three years after the Kairezes received $70,672 from the closing of the loan from Budget, they filed the action below. Budget denied liability and later moved for summary judgment, which the trial court granted. This appeal followed.

4

ANALYSIS

The Kairezes argue that summary judgment in favor of Budget was improper because genuine issues of material fact remained with respect to their claim to a continuing property interest; for negligence; and under the Consumer Protection Act (CPA), chapter 19.86 RCW. They also argue that their receipt of $70,672 from the loan closing should not estop them from relying on their deed of trust, as argued by Budget.

The Kairezes failed to present evidence demonstrating any genuine issue of material fact in support of their claim to a property interest in the apartment complex, which is fatal to all of the issues they raise on appeal. We turn to that first.

> I.  *Did the Kairezes present evidence raising a genuine issue of material fact that they had a property interest in the apartment complex?*

On appeal from an order granting summary judgment, the standard of review is de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment will be upheld if the pleadings, affidavits, answers to interrogatories, admissions, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300-01, 45 P.3d 1068 (2002); CR 56(c). Like the trial court, we review all facts and reasonable inferences from the facts in a light most favorable to the nonmoving party. *Id.* at 300.

5

The moving party bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets that burden, the nonmoving party must present evidence that material facts are in dispute. *Atherton Condo. Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). If it fails to present evidence that material factual issues remain, then summary judgment is proper. *Id.*

Budget met its initial burden by showing that the deed of trust on which the Kairezes rely was granted to them by Nick, who never had an ownership interest in the apartment complex. The deed of trust provided in relevant part:

> Grantors: Nicholas Robert Kairez
> Beneficiary: Philip[2] and Carolyn Kairez
>
> . . . .
> THIS DEED OF TRUST, made this _____ day of _____, between
> Nicholas Robert Kairez, GRANTOR(S), . . . Benton Franklin Title
> Company of Kennewick, TRUSTEE, . . . and Philip and Carolyn Kairez,
> BENEFICIARY . . . .
> WITNESSETH: Grantor(s) hereby bargain(s), sell(s), and convey(s) to
> Trustee in trust, with power of sale, the following described real
> property.

CP at 46. The signature block for the grantor was for "NICHOLAS ROBERT KAIREZ." CP at 49. The acknowledgement required by RCW 64.04.020 was documented by a certification that the notary public knew or had satisfactory evidence "that Nicholas Robert Kairez is the person who appeared before me, and said person acknowledged that

---

[2] The record includes various spellings of Mr. Kairez's first name.

he signed this instrument and acknowledged it to be his free and voluntary act for the uses and purposes mentioned in this instrument." CP at 50.

One cannot convey a greater title or interest in property than he or she has. *Sofie v. Kane*, 32 Wn. App. 889, 895, 650 P.2d 1124 (1982). Since Nick had no interest in the apartment complex, his written and recorded deed of trust in favor of his parents conveyed no interest to Benton Franklin Title Company as trustee that could be exercised for the benefit of the Kairezes.

In response to this initial showing by Budget, the Kairezes submitted the declarations of Ms. Kairez and Nick. Ms. Kairez's declaration stated, in part, that "[i]n our dealings with [Nick], my husband, Nick and I all understood we were lending money to NRK." CP at 35. As to the funds wired to her and her husband's account at the time the Budget loan closed, she stated she "believed we were receiving a partial payment towards Nick's debt owed to us, and that was it." CP at 36. Ms. Kairez's declaration also described and attached a trustee's sale guarantee that she characterized as "includ[ing] our Deed of Trust as superior in time to that of Budget's." CP at 37.

Nick's declaration similarly stated, "While it appears from the . . . Promissory Note, Deed of Trust, and Amendment to Promissory Note, that they were signed in my personal capacity, the intent was clearly that the debt was owed by NRK. My parents and I understood the same, and to the extent that we went forward with that intent, I ratified, as the sole member of NRK, the loans as NRK debts." CP at 79. Nick's declaration also

7

stated that "NRK, as an entity, expired as of March 31, 2008. NRK was deemed inactive by the Washington State Secretary of State as of July 1, 2008." *Id.*

Based on this evidence, the Kairezes argue that while the parties agree that Nick signed a promissory note and a deed of trust, they disagree as to the capacity in which he signed the agreements and who is bound by their terms. According to the Kairezes, trial is required because they contend that Nick's signature bound NRK whereas Budget contends it bound Nick individually and not NRK. But this disagreement over who is bound presents a legal dispute, not a factual one.

Viewing the evidence in the light most favorable to the Kairezes and accepting their testimony that there was an unwritten understanding that NRK would grant the Kairezes a deed of trust interest in the apartment complex, the rights and obligations arising out of that unwritten understanding are dictated by the statute of frauds and the recording statute. The statute of frauds relating to real estate provides, in part, that "[e]very deed shall be in writing, signed by the party bound thereby." RCW 64.04.020. A deed of trust is subject to the statute of frauds. *GLEPCO, LLC v. Reinstra*, 175 Wn. App. 545, 554, 307 P.3d 744, *petition for review filed*, No. 89245-8 (Wash. Sept. 3, 2013). In light of the statute, a deed of trust interest cannot be created by an oral understanding.

In addition, an unrecorded interest in real property is ordinarily subordinate to a recorded interest. *Zervas Grp. Architects, PS v. Bay View Tower LLC*, 161 Wn. App.

322, 325, 254 P.3d 895 (2011). This is the result under the real estate recording statute, RCW 65.08.070, which provides, in pertinent part:

> A conveyance of real property . . . may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor . . . of the same real property or any portion thereof whose conveyance is first duly recorded.

A "conveyance" for purposes of the statute includes "every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected." RCW 65.08.060(3). A deed of trust is therefore a conveyance subject to the recording statute. The unwritten, unrecorded understanding that NRK would grant the Kairezes a deed of trust interest in the apartment complex is void against Budget under the recording statute.

The Kairezes nonetheless argue that they have shown that Nick, as the sole member of NRK, had actual and apparent authority to bind NRK. We accept the fact that he did. But he did not bind NRK in the deed of trust that he signed individually and recorded in 2007. The language of that deed of trust consistently and unambiguously identifies Nick as the grantor. It makes no mention of NRK. Parol evidence that flatly contradicts the deed of trust's plain meaning cannot be given substantive effect.[3]

---

[3] Both parties argue that *Griffin v. Union Savings and Trust Co.*, 86 Wash. 605, 150 P. 1128 (1915) supports their position as to the significance of the form of the signature block on the deed of trust. A signature block assumed importance in *Griffin*

*Thornton v. Interstate Sec. Co.*, 35 Wn. App. 19, 29-30 n.2, 666 P.2d 370 (1983) (citing *Mapes v. Santa Cruz Fruit Packing Corp.*, 26 Wn.2d 145, 173 P.2d 182 (1946)). The Kairezes characterize Budget as arguing that Nick's encumbrance of the property was ultra vires, and then argue that a corporation that retains the benefit of an ultra vires act thereby ratifies it. This argument is flawed on several levels, the most basic being that the written, recorded deed of trust to the Kairezes is not an encumbrance by NRK at all. "The phrase 'ultra vires' describes corporate transactions that are outside the purposes for which a corporation was formed and, thus, beyond the power granted the corporation by the Legislature." *Hartstene Pointe Maint. Ass'n v. Diehl*, 95 Wn. App. 339, 344, 979 P.2d 854 (1999). Budget's position has nothing to do with the concept of ultra vires action; it merely contends, correctly, that Nick's individual written grant of a deed of trust could not convey an interest in property in which he had no individual interest.

The Kairezes finally argue that the trial court erred in finding that Nick never had any interest in the apartment complex. They argue that title to property owned by an LLC passes to its owner and NRK ceased to exist by July 2008 at the latest, with the result that its interest in the complex passed to Nick. *See* RCW 64.04.070 (providing that

---

because it could not be determined from the body of the letter that was at issue whether the author was undertaking a guarantee individually or on behalf of an alleged principal, disclosed by the letterhead. There is no ambiguity in the written deed of trust in this case. *Griffin* and other cases that focus on the signature block to resolve an ambiguity as to capacity are inapposite.

10

after acquired title follows a deed). Even so, the Kairezes' deed of trust would only attach to title in the condition that Nick received it in July 2008, subject to other encumbrances existing at that time. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 18.3, at 308 (2d ed. 2004) (citing *Occidental Life Ins. Co. v. May*, 194 Wash. 201, 77 P.2d 773 (1938)). The interest acquired by Nick was subject to the deed of trust to Budget that NRK had granted almost a year earlier, in September 2007.

To summarize, viewing the evidence in the light most favorable to the Kairezes, they were the beneficiaries under a *written, recorded* deed of trust that was incapable of conveying an interest in the apartment complex because the grantor—their son—had no interest to convey. They had an *unwritten understanding* with their son, as manager of NRK, that they enjoyed a deed of trust interest in the apartment complex. But that unwritten understanding was void under the statute of frauds and void against Budget under the recording statute. The trial court properly granted summary judgment dismissing the Kairezes' quiet title claim asserting an interest in the property. Because the Kairezes had no interest as a matter of law, we need not address whether they were estopped to assert it as a result of their receipt of $70,672 from the closing of Budget's loan, as argued by Budget.

>    II.    *Did the trial court err in granting summary judgment*
>           *dismissing the Kairezes' negligence and CPA claims?*

The Kairezes' complaint also asserted claims against Budget for violation of the CPA and for negligence. In opposing summary judgment, they argued that the "mysterious disappearance" of their deed of trust as an exception to title between the time of the trustee's sale guarantee and a litigation guarantee that their lawyer ordered in December 2010 raises a factual dispute preventing summary judgment on these claims. Br. of Appellant at 26. According to the Kairezes, "That the Kairez lien interest was removed from title during the same time that Budget was conducting its foreclosure . . . at a minimum raises a factual dispute as to whether there has been an unfair or deceptive act or practice." *Id.* at 23. They similarly argue that removal of their lien interest raises a factual dispute as to a breach of a duty of care.

Our conclusion that the Kairezes had no lien against the apartment complex effectively disposes of their CPA and negligence claims. Because the Kairezes had no interest in the property, Budget owed them no duty, nor could any act or omission by Budget cause injury to them.

Beyond that, however, and even if the Kairezes had a viable but disputed basis for an interest in NRK's property, their sheer conjecture that their lien was dropped as an exception to title because of some wrongful act or breach of duty by Budget does not satisfy their burden as the nonmoving party. A nonmoving party must set forth specific

12

facts showing there is a genuine issue for trial. CR 56(e). There are any number of reasons why the title officer who prepared the litigation guarantee might have omitted the Kairezes' deed of trust, ranging from oversight to a conclusion that the deed of trust did not affect NRK's title. A nonmoving party cannot rely on mere allegations, speculation, or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.