[Nos. 2251–3; 2277–3. Division Three. March 24, 1978.]

GENE J. KEY, *Respondent,* v. CASCADE PACKING, INC., ET AL, *Appellants.*

CHET MORRISON, *Respondent,* v. CASCADE PACKING, INC., ET AL, *Appellants.*

*Gregory S. Petrie, Oles, Morrison, Rinker, Pickel, Stanislaw & Ashbaugh,* and *Jack McSherry,* for appellants.

*John P. Gilreath* and *Dano, Cone, Fraser & Gilreath,* for respondents.

ROE, J.—Defendant Clyde Hovik became the president and major stockholder of defendant Cascade Packing, Inc. (hereafter Cascade) late in 1976. Plaintiffs Key and Morrison entered into cattle–purchase arrangements with Cascade whereby Cascade would have the use of the plaintiffs' money. When the plaintiffs became apprehensive about Cascade's ability to reimburse them, they sought a personal guaranty from defendant Clyde Hovik. They presented a guaranty form to Elmer Hovik, the defendant's son, and asked that Clyde sign it. Instead, Clyde sent each of the plaintiffs the following, beneath Cascade's letterhead:

> This will serve to assure you that in the event Cascade Packing, Inc., fails to pay you for the cattle you purchase for Cascade Packing, Inc., I will personally guarantee payment to you.
>
> Sincerely,
> CASCADE PACKING, INC.
> s/ Clyde A. Hovik
> CLYDE A. HOVIK
> President

Relying on this letter, the plaintiffs continued to purchase cattle on Cascade's behalf. This suit resulted when certain checks issued to the plaintiffs from Cascade were dishonored by the bank for insufficient funds.

The Superior Court granted the plaintiffs summary judgment against (1) Cascade on the debt; (2) Clyde Hovik individually as a guarantor; (3) the marital community of Clyde and Katie Hovik; and (4) Cascade alone for $7,500 attorney's fees. The judgment against Cascade on the debt was not appealed.

The issues presented here are whether summary judgment was proper against defendant Hovik and against the Hovik marital community on the guaranty, and whether the award of attorney's fees was proper. We affirm the trial court's judgment, except as to the award of attorney's fees.

 The basic principles of summary judgment are well established:

The purpose of summary judgment is to avoid a useless trial when there is no genuine issue of any material fact. If, however, there is a genuine issue of material fact a trial is necessary. It is the trial court's function to determine whether such a genuine issue exists. The burden of proving, by uncontroverted facts, that no genuine issue exists is upon the moving party.

*LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975). In making this determination the trial court, and the appellate court on review, must consider all the evidence and make all reasonable inferences most favorably to the nonmoving party. *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974). If the facts presented by the pleadings, depositions, admissions, and affidavits create no genuine issue, then the court must determine whether the moving party is entitled to judgment as a matter of law. *LaPlante v. State, supra.* When the motion is supported by evidentiary matter, the adverse party may not rest on mere allegations in the pleadings, but must allege specific facts to raise a genuine issue for trial. *LaPlante v. State, supra.*

The body of the letter is unambiguous. Clyde Hovik stated: "I will personally guarantee payment to you." He contends, though, that use of his corporate title under his signature creates such an ambiguity that the question of his intent to bind himself personally or to bind only the corporation is an unresolved issue of a material fact.

Defendant cites cases in an attempt to show that his form of signature renders the letter ambiguous as a matter of law; however, those cases involved ambiguity which existed in the body of the document itself. In both *Puget Sound Nat'l Bank v. Selivanoff,* 9 Wn. App. 676, 514 P.2d 175 (1975), and *Seattle–First Nat'l Bank v. Hawk,* 17 Wn. App. 251, 562 P.2d 260 (1977), it was "the undersigned" who guaranteed payment of a debt. In such a case the intent behind the form of signature is crucial.

In this case the defendant sent his letter in answer to a request from the plaintiffs for a personal guaranty, and they relied on it as such. He used the first person to state

the guaranty. The cases do not support his contention that, because his corporate title was affixed, a completely clear document was rendered ambiguous. The cases require a finding of ambiguity only when reasonable inferences could support another interpretation. *Cf. Hansen v. Lindell,* 14 Wn.2d 643, 129 P.2d 234 (1942).

The next question is whether summary judgment was proper on the issue of the liability of the Hovik marital community. The facts before the trial court were that the defendant acquired his Cascade stock in 1976, and that the defendant and his wife had been married for a considerable period of time. The affidavits of both Clyde and Katie Hovik denied that the community had received any benefit from the guaranty, and averred that Katie had neither known of it nor consented to it.

█ The rule in this state is that property acquired during marriage is presumed to be community property. *Beyers v. Moore,* 45 Wn.2d 68, 272 P.2d 626 (1954). Further, there is a presumption that a guaranty given by one spouse, for the benefit of a family owned corporation, binds the community. *Proff v. Maley,* 14 Wn.2d 287, 128 P.2d 330 (1942). The plaintiffs are entitled to rely upon these presumptions in the context of summary judgment, at least until "the opposite party adduces prima facie evidence to the contrary." *Bates v. Bowles White & Co.,* 56 Wn.2d 374, 378, 353 P.2d 663 (1960).

█ Given these presumptions, the only material fact which the defendants could have alleged, so as to require a trial on this issue, is that the stock was not held as community property. The Hoviks do not allege this, relying only upon a conclusory allegation that there was no community benefit. Such an allegation would be material only if there were no consideration for the guaranty; that is not the case here. *Cf. Sun Life Assurance Co. of Canada v. Outler,* 172 Wash. 540, 20 P.2d 1110 (1933). They must allege some evidentiary fact sufficient to raise a genuine issue for trial. *Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964). A material fact is one on which the outcome of

the litigation depends. *Morris v. McNicol, supra.* The allegations that Katie Hovik neither knew of nor consented to the guaranty are also immaterial. *Fies v. Storey,* 37 Wn.2d 105, 221 P.2d 1031 (1950).

Since the defendants failed to raise a genuine issue of material fact, we must conclude that the trial court's award of summary judgment against the community was proper.

The final issue involves attorney's fees. Plaintiff Key was awarded attorney's fees on the basis of a "Security Agreement" dated November 5, 1976, given by Hovik to plaintiff Key with respect to the sale of Cascade stock. Although defendant Cascade admitted the existence of this agreement in its answer to the complaint, the document itself was never presented to the trial court.

The only document which was properly before the court was a "Contract for Sale of Stock", of the same date. It also contained a provision for attorney's fees, but its provision only covers litigation "with respect to this agreement." This document additionally contained a grant of a security interest, which the "Security Agreement" mentioned above presumably embodied.

That "Security Agreement," upon which plaintiff relies, was not only not before the court, but its alleged terms were in direct conflict with the contract which actually was before the court. Defendant Cascade need allege nothing here. It cannot be said that the plaintiff met his burden of demonstrating that there was no unresolved issue of material fact. *LaPlante v. State, supra.* The summary award of attorney's fees must be reversed.

Since remand is necessary to determine the plaintiff's entitlement to an award of attorney's fees, we should also consider the amount to be allowed.

The trial court awarded $7,500 in attorney's fees to be collected only from Cascade. This amount represents approximately 10 percent of the judgment. Counsel for the plaintiff specifically admitted that this fee could not be justified on an hourly basis, but contends that it will not completely satisfy his total bill under his contingent fee

arrangement with his client. It might be noted that the judgment against Cascade was uncontested, and also that some portion of counsel's time was spent on the liability of Hovik personally and of the Hovik marital community, which is not properly reimbursable under the contract alleged as supporting the award. *Cf. National Bank v. Myers,* 75 Wn.2d 287, 450 P.2d 477 (1969). The trial court did not take any evidence as to the reasonableness of the fee, nor did it elaborate on any underlying reasons for the amount of the award.

■ Any attorney's fee awarded must be reasonable. RCW 4.84.020. If the defendant is to be liable for the plaintiff's attorney's fees, that liability must be only for a reasonable amount. The reasonableness of an award should be subject to appellate review. To facilitate review, the trial court ought to state the reasons underlying the amount of the award.

■ Certain criteria for reasonableness of attorney's fees are set out in (CPR) DR 2–106, Code of Professional Responsibility. While this rule governs the relationship between attorney and client, some of the criteria it sets out should be considered, although not all of them apply with respect to an award of fees against a defendant. Among the items in the rule which should be considered are:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

. . .

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(CPR) DR 2–106(B).

The trial court's award was 10 percent of the judgment, but such a formula was expressly rejected in *National Bank v. Myers, supra.* Judgment in that case was rendered on a note which provided for an attorney's fee of 10 percent of the amount of the note if litigation were required. The court held that, where the judgment was large and the time

spent procuring it was relatively small, a 10 percent award would have been unconscionable and a penalty.

The plaintiff attempts to distinguish *Myers* on the ground that it did not involve a contingent fee arrangement, while there is such an arrangement here. The contention seems to be that, because counsel's fee in this case is contingent, as between himself and his client, a higher award is reasonable.

(CPR) DR 2–106(B), cited above, does also consider "Whether the fee is fixed or contingent", but this should be a factor only between attorney and client. Such an arrangement is perfectly valid, but it should not control the size of the burden placed on a defendant. The existence of a contingent fee arrangement between an attorney and client says nothing about the reasonableness of an award of attorney's fee granted to a plaintiff against a defendant. The attorney's fee awarded should be neither enhanced nor diminished by the presence of such an arrangement.

The trial court's judgment against Clyde Hovik personally, and against the marital community of Clyde and Katie Hovik, is affirmed. The judgment against Cascade Packing, Inc., for attorney's fees is reversed, and the cause is remanded for trial on the issue of attorney's fees.

GREEN and McINTURFF, JJ., concur.