952 P.2d 590 (1998)
134 Wash.2d 692
WILSON COURT LIMITED PARTNERSHIP, a Washington limited partnership, Respondent,
v.
TONY MARONI'S, INC., a Washington corporation; M & R Foods, Inc., a Washington corporation; and Anthony L. Riviera and Jane Doe Riviera, husband and wife, Petitioners.
No. 64766-6.
Supreme Court of Washington, En Banc.
Argued September 18, 1997.
Decided March 12, 1998.
*591 *592 Montgomery, Purdue, Blankinship & Austin, Joseph C. Brown, Jr., Seattle, for Petitioners.
Jameson, Babbitt, Stites & Lombard, Bradley L. Brigham, Seattle, for Respondent.
TALMADGE, Justice.
We must determine in this case if a guaranty of a commercial lease signed by the president of a corporate tenant was enforceable against the president personally, although he signed the guaranty in a representative capacity. We hold a signature on a guaranty with additional words that are descriptio personae generally binds the individual who signed the agreement unless the signature creates an ambiguity as to who is bound. The courts must then construe the guaranty. In the present case, the president's signature creates an ambiguity but we hold he was personally liable because if we were to adopt his interpretation of the guaranty, the corporate tenant would have to be the guarantor of its own lease. Such an interpretation is commercially unreasonable because, as a matter of law, a party cannot be the guarantor of its own contract. We affirm the summary judgment in favor of the landlord on the guaranty.

ISSUE
Was a corporate president who signed a guaranty of a commercial lease between the landlord and the corporation personally liable under the guaranty although he signed the guaranty with the notation "President" after his name?

FACTS
Tony Maroni's, Inc. (Tony Maroni's) signed a written commercial lease (Lease) for Seattle retail space owned by Wilson Court Limited Partnership (Wilson). Anthony L. Riviera (Riviera), Tony Maroni's President, signed the Lease. Tony Maroni's leased 1,676 square feet of space for a 60-month term. The Lease provided for extensive tenant improvements, estimated to be worth $45,520. Initially, Tony Maroni's contributed $5,000 toward those improvements, and then was to pay an additional $7,000 over the life of the Lease, amortized at $148.73 per month. Wilson contributed the balance of $33,520 toward the improvements.
Contemporaneously with the execution of the Lease, Riviera executed a guaranty agreement (Guaranty) which, was incorporated by reference in the Lease. Riviera wrote the description "President" by hand after his name on the signature line of the Guaranty. The Guaranty stated:

EXHIBIT 1 TO EXHIBIT G

GUARANTY
REFERENCE is made to lease dated the ____ day of __________, 19__, between Wilson Court Limited Partnership, as Landlord, and Tony Maroni's, Inc. as Tenant.

*593 FOR VALUE RECEIVED and in condition for, and as an inducement to, the Landlord entering into said lease, which has been executed simultaneously herewith, the undersigned hereby guarantees to the Landlord, its successors and assigns, the full performance and observance of all covenants, conditions and agreements therein provided to be performed and observed by the Tenant, its successors and assigns, and expressly agrees that the validity of this agreement and the obligations of the Guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion by the Landlord against the Tenant of any of the rights or remedies reserved to the Landlord pursuant to the provisions of said lease, or by reason of the waiver by the Landlord of, or failure to [sic] the Landlord to, enforce any of the terms, covenants or conditions of said lease, or the granting of any indulgence or extension of time to the Tenant, all of which may be given or done without notice to the Guarantor. The undersigned waives notice of default in the payment of rent, additional rent or any other amounts contained or reserved in said lease, or notice of a breach or non-performance on any of the covenants, conditions or agreements contained in said lease.
The undersigned further agrees that its liability under this agreement and guaranty shall be primary, and that in any right of action which shall accrue to the Landlord under the said lease, the Landlord may at its option, proceed against the undersigned without having commenced any action, or having obtained any judgment, against the Tenant and that the venue of any action against the undersigned may be in the county in which the premises are located.
WITNESS THE EXECUTION HEREOF THIS 23 day of December, 1992.
 GUARANTOR:
 By: /s/ Anthony L. Riviera President
Clerk's Papers at 81. The Guaranty indicated its execution was a condition for Wilson to lease the space to Tony Maroni's. However, the Guaranty did not specifically identify in its text who was bound, referring only to "the undersigned" or "Guarantor."
In contrast with the Guaranty, Riviera also signed the Lease in a representative capacity, but the Lease contained numerous indicia that only Tony Maroni's was bound by the Lease terms. Paragraph 15.25 required a warranty from Riviera that the corporate tenant was properly incorporated and qualified to do business, the corporation had authority to enter into the Lease and perform its terms, the Lease bound the corporation, and the corporate board of directors would adopt a resolution authorizing or ratifying execution of the Lease. The signature block of the Lease indicated Tony Maroni's was the tenant and contemplated that Riviera signed as "Its: President." Moreover, Riviera's signature was notarized as the president of Tony Maroni's as well.
Shortly after the execution of the Lease, Tony Maroni's sought Chapter 11 bankruptcy protection. Tony Maroni's assigned the Lease to M & R Foods (M & R), another Riviera company. Thereafter, M & R defaulted on the Lease. Wilson filed suit against Tony Maroni's, M & R, and Riviera seeking a writ of restitution and damages. The trial court granted Wilson a writ of restitution. Wilson then moved for summary judgment against M & R for damages resulting from breach of the Lease and against Riviera on the Guaranty. Riviera also moved for summary judgment asserting he was not personally liable on the Guaranty because he signed only in his capacity as a corporate officer. The trial court granted summary judgment to Wilson and Division One of the Court of Appeals affirmed, holding the purpose and circumstances surrounding the Guaranty could lead only to the conclusion the parties intended to bind Riviera personally. Wilson Court Ltd. Partnership v. Tony Maroni's, Inc., 83 Wash.App. 194, 198, 920 P.2d 1213 (1996). We granted review.

ANALYSIS
When reviewing an order for summary judgment, we engage in the same inquiry as the trial court, and will affirm summary judgment if there is no genuine issue of any material fact and the moving party is *594 entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in a light most favorable to the nonmoving party, and all questions of law are reviewed de novo. We will sustain the trial court's judgment upon any theory established in the pleadings and supported by proof. Schaaf v. Highfield, 127 Wash.2d 17, 20-21, 896 P.2d 665 (1995); Failor's Pharmacy v. Department of Soc. & Health Servs., 125 Wash.2d 488, 493, 886 P.2d 147 (1994).
While the parties agree a guaranty here was intended and executed by the parties, they disagree as to who is bound by its terms. Riviera asserts he did not intend to be personally bound by the Guaranty and his signature on the Guaranty, he argues, is an objective manifestation of that intent. By adding the title "President" to his signature when he signed the Guaranty, he contends he was signing in a representative capacity only, on behalf of Tony Maroni's, making the Guaranty unenforceable against him personally. Wilson, on the other hand, contends the terms of the Guaranty itself, and the nature of guaranties generally, indicate the Guaranty was to be enforced against Riviera personally.
At the outset, a critical issue is whether there was mutual assent by these parties to be bound by the Guaranty. Yakima County (West Valley) Fire Protection Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 388, 858 P.2d 245 (1993). Washington follows an objective manifestation test for contracts, looking to the objective acts or manifestations of the parties rather than the unexpressed subjective intent of any party. U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 570, 919 P.2d 594 (1996); Lynott v. National Union Fire Ins. Co., 123 Wash.2d 678, 684, 871 P.2d 146 (1994); Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wash.2d 939, 944, 640 P.2d 1051 (1982); City of Everett v. Sumstad's Estate, 95 Wash.2d 853, 855, 631 P.2d 366 (1981). A guaranty is a contract subject to these general rules regarding contract formation. Hall v. Custom Craft Fixtures, Inc., 87 Wash.App. 1, 937 P.2d 1143 (1997) (applying objective manifestations test to asserted guaranty agreement); Bellevue Square Managers v. Granberg, 2 Wash.App. 760, 766, 469 P.2d 969 (proper interpretation and construction of guaranty agreement is based upon same principles as those applied to contracts generally), review denied, 78 Wash.2d 994 (1970). While such mutual assent is ordinarily a question of fact, Sea-Van Invs. Assocs. v. Hamilton, 125 Wash.2d 120, 126, 881 P.2d 1035 (1994), the parties here both moved for summary judgment on the enforcement of the Guaranty. There is no genuine issue as to any material fact with respect to the existence of a guaranty. The question is who is bound by it.
Early Washington cases regarding descriptive language following a signature on a contract indicate such language is generally considered to be descriptio personae, that is, merely descriptive of the person executing the agreement, and does not foreclose personal liability for the person signing the document. Where the agreement contains language binding the individual signer, additional descriptive language added to the signature does not alter the signer's personal obligation. See, e.g., Gavazza v. Plummer, 53 Wash. 14, 15, 101 P. 370 (1909) (holding the language of the guaranty personally bound the signer despite the descriptio personae addition of "Treas." to his signature, and noting: "If it is desired to escape personal liability in the contract of an agent or other representative, the intention so to do must be expressed in clear and explicit language; otherwise, a personal obligation arises."). Accord Schwab v. Getty, 145 Wash. 66, 76-77, 258 P. 1035 (1927).
However, other Washington contract cases indicate where the face of the document does not otherwise indicate the signer's capacity, a signature with additional descriptive language may create an ambiguity requiring judicial construction of the agreement to determine who is bound by its terms. See Hansen v. Lindell, 14 Wash.2d 643, 649-54, 129 P.2d 234 (1942). See also Robertson v. Club Ephrata, 48 Wash.2d 285, 295, 293 P.2d 752 (1956); Schwab v. Getty, 145 Wash. 66, 71-72, 258 P. 1035 (1927). In Griffin v. Union Sav. & Trust Co., 86 Wash. *595 605, 609-11, 150 P. 1128 (1915), we noted the rule applicable in such circumstances:
when words which may be either descriptive of the person, or indicative of the character in which a person contracts, are affixed to the name of a contracting party, prima facie, they are descriptive of the person only; but the fact that they were not intended by the parties as descriptive of the person, but were understood as determining the character in which the party contracted, may be shown by extrinsic evidence; but the burden of proof rests upon the party seeking to change the prima facie character of the contract.
Id. at 610, 150 P. 1128 (citation omitted).
In the guaranty context, three Court of Appeals cases, Puget Sound Nat'l Bank v. Selivanoff, 9 Wash.App. 676, 514 P.2d 175 (1973), Seattle-First Nat'l Bank v. Hawk, 17 Wash.App. 251, 562 P.2d 260 (1977), and Key v. Cascade Packing Co., 19 Wash.App. 579, 576 P.2d 929 (1978), are cited by the parties with regard to the issues in this case.
In the first case, the Selivanoffs were respectively husband and wife, president and secretary, and sole stockholders of a corporation. The husband, as president and general manager, sought a bank loan for the corporation. The bank agreed to lend money to the corporation if both the husband and wife would execute a guaranty agreement and a guarantor's acknowledgment of independent consideration in their individual capacities. The bank delivered the instruments to the husband who took them home and requested his wife sign them. She refused, fearing her separate property would be subject to potential liability under the guaranty. Her husband then convinced her to sign, assuring her that if she inserted "Sec." after her name the corporation would be liable on the guaranty and she would not. They both then signed the instruments, respectively adding "Pres." and "Sec." to their signatures and returned the instruments to the bank. The bank made subsequent loans to the corporation, but at some point blotted out the abbreviations "Pres." and "Sec." from the instruments without the Selivanoffs' knowledge. Later, when the corporation defaulted, the bank demanded payment based on the guaranty, which the Selivanoffs' refused. The bank sued to recover on the guaranty and the trial court entered judgment against the husband and the Selivanoff marital community, but dismissed the bank's claim against the wife individually.
The Court of Appeals found the wife's signature ambiguous and resorted to parol evidence to explain the ambiguity. Such parol evidence indicated the wife intended to sign the guaranty only in her representative capacity, having been convinced by her husband this would protect her separate property. Given the circumstance of the bank altering the signatures, it was clearly put on notice of a problem. Under these circumstances, the Court of Appeals held the bank was charged with knowledge of the facts of which it was put on notice. Because the bank ignored the true facts reasonably ascertainable by it after it was put on notice by the form of the wife's signature (i.e., that she did not intend to bind herself individually), the Court applied the rule that "a defendant is not liable under a contract executed by him as a result of his material unilateral mistake of fact or law if the plaintiff knows of the defendant's mistake." Selivanoff, 9 Wash.App. at 681, 514 P.2d 175.[1] *596 Hawk did not involve the signature of the guarantor or whether a guaranty existed, but it demonstrates application of contract principles in resolving an ambiguity in the scope of a guaranty (i.e., what the guaranty covers) rather than additions to the signing party's signature (i.e., who the guaranty binds). In Hawk, Seafirst Bank told Herkenrath, the owner of Country Ford, Inc., that it could not approve his loan application without a third party guarantor. Hawk subsequently signed an agreement to guarantee payment of loans to "Leon Herkenrath, DBA Country Ford, Inc." Hawk, 17 Wash.App. at 254, 562 P.2d 260. The Court of Appeals held the guaranty was ambiguous as to whether Hawk intended to guarantee loans to Herkenrath or to Country Ford. While the bank clearly wanted a third party guaranty for loans to Country Ford, it produced no evidence that the loan officer ever communicated this subjective intent to Hawk. The court declined to infer such intent for both parties from the bank's intent alone. Because the bank had failed to produce extrinsic evidence of Hawk's intent, the court turned to established rules of construction. Noting "[i]t is a fundamental rule that guarantors can be held only upon the strict terms of their contract, as a contract to answer for the debt of another must be explicit and is strictly construed[,]" id.at 256, 562 P.2d 260, the court found language provided by the bank designating the covered party was ambiguous and construed the contract against the bank as the party providing the ambiguous language. The court held that Hawk had not agreed to guarantee loans to Country Ford.
Finally, in Key, Clyde Hovik, the president and major stockholder in Cascade Packing Company, entered into a cattle purchase agreement on Cascade's behalf with Key and Morrison. Key and Morrison became concerned Cascade could not fulfill its financial obligations and requested a personal guaranty from Hovik. Hovik sent the following guaranty to Key and Morrison on Cascade's letterhead:
This will serve to assure you that in the event Cascade Packing, Inc., fails to pay you for the cattle you purchase for Cascade Packing, Inc., I will personally guarantee payment to you.
 Sincerely,
 CASCADE PACKING, INC.
 s/ Clyde A. Hovik
 CLYDE A. HOVIK
 President
Key, 19 Wash.App. at 581, 576 P.2d 929. The trial court granted a judgment to Key and Morrison against Hovik on the guaranty, and the Court of Appeals affirmed, stating Hovik's addition of descriptive language after his signature failed to create any ambiguity. Id. at 583, 576 P.2d 929. Unlike Selivanoff and Hawk, there was no ambiguity in the body of the guaranty itself. Hovik's addition of the descriptive language could not alter the unambiguous personal guaranty he extended. Hovik was personally liable.
These Court of Appeals cases comport with the basic principles in contract cases for addressing whether signatures with added descriptive language create personal liability on the part of the signer. In Key, the Court of Appeals reaffirmed that where the guaranty contains clear language binding the signer, the additional descriptive language does not alter the signer's personal liability. In Selivanoff, the Court of Appeals indicated additional descriptive language after the signature may create an ambiguity requiring judicial construction. Hawk directs that basic contract construction principles apply in resolving an ambiguous guaranty.
We now turn to the application of these general principles in the case at bar. In this case, the Guaranty does not clearly specify the person to be bound in its text, referring generically to "the undersigned" or "Guarantor." In this context, Riviera's signature with the descriptive language of "President" creates a question as to whether the parties intended Riviera personally or Tony Maroni's to be bound by the Guaranty.
*597 This combination of circumstances renders the Guaranty ambiguous. See Key v. Cascade Packing Co., 19 Wash.App. 579, 582-83, 576 P.2d 929 (1978).
In construing the Guaranty in light of this ambiguity, we acknowledge contracts to answer for the debt of another must be explicit and are strictly construed, Hawk, 17 Wash.App. at 256, 562 P.2d 260, but we must also recognize the commercial context in which this Guaranty was signed. Where two commercial entities[2] sign a commercial agreement, we will give such an agreement a commercially reasonable construction. In this case, such a construction leads us to the conclusion Riviera is personally liable on the Guaranty as a matter of law.
First, any ambiguity in the Guaranty was created by Riviera himself in adding the descriptive language to his signature. Such ambiguity will be construed against Riviera as the party who drafted this language. Hawk, 17 Wash.App. at 256, 562 P.2d 260; Jacoby v. Grays Harbor Chair & Mfg. Co., 77 Wash.2d 911, 918-19, 468 P.2d 666 (1970).
Second, the language of the Guaranty itself compels the view Riviera is personally liable. We must interpret the Lease and Guaranty as a whole, giving reasonable effect to each of its parts. See Public Employees Mut. Ins. Co. v. Sellen Constr. Co., 48 Wash.App. 792, 796, 740 P.2d 913 (in construing a contract, the court should apply construction that will give each part of the instrument some effect), review denied, 109 Wash.2d 1016 (1987). The plain language of the Guaranty clearly contemplates three separate entities, the Landlord, the Tenant and the Guarantor, and so designates them. It identifies Wilson as the Landlord, Tony Maroni's as the Tenant, and addresses the obligations of a separate third party, referred to interchangeably as the undersigned or Guarantor. The Guaranty provides in pertinent part:
the undersigned hereby guarantees to the Landlord, its successors and assigns, the full performance and observance of all covenants, conditions and agreements therein provided to be performed and observed by the Tenant ... obligations of the Guarantor hereunder shall in no way be terminated, affected or impaired by reason of the assertion by the Landlord against the Tenant of any of the rights or remedies reserved to the Landlord pursuant to the provisions of said lease ... the granting of any indulgence or extension of time to the Tenant ... may be given or done without notice to the Guarantor ... the Landlord may at its option, proceed against the undersigned without having commenced any action, or having obtained any judgment, against the Tenant ...
Clerk's Papers at 87 (emphasis added). The only reasonable interpretation of these provisions is that the Landlord, Tenant and undersigned/Guarantor are three separate and distinct entities. If Riviera signed the Guaranty only in his representative capacity, Tony Maroni's would be both Tenant and Guarantor, rendering the Guaranty provisions absurd. For example, it would be impossible for the Landlord to proceed against the Guarantor without having commenced any action against the Tenant if they are the same entity.
Moreover, the Guaranty language stands in stark contrast to the language of the Lease where a corporate obligation was unambiguously contemplated. Riviera signed the Lease as president of Tony Maroni's to bind the company. No such intent can be gleaned from the Guaranty. The Guaranty appears at page 24 of the Lease as "Exhibit 1 to Exhibit G" and provides that it is "in condition for, and as an inducement to the Landlord entering into said lease, which has been executed simultaneously herewith." Clerk's Papers at 81. As an inducement to the execution of the Lease, the Guaranty should be reasonably interpreted in such a way as to give it effect. Riviera's asserted position renders the entire Guaranty meaningless, *598 hardly an inducement to anything, and is contrary to established rules of contract construction.
Third, as the Court of Appeals correctly noted, the very nature of a guaranty is such that Riviera created personal liability by his signature. As early as Robey v. Walton Lumber Co., 17 Wash.2d 242, 255, 135 P.2d 95 (1943), we noted that an entity cannot be a guarantor of its own obligations:
The contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily. An approved definition of "guaranty" is "a promise to answer for the debt, default, or miscarriage of another person." 24 Am.Jur. 873-4, § 2.
See, also, 28 C.J. 886, § 1, and 12 R.C.L. 1053, § 1.
A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor. If a primary or principal obligation does not exist, there cannot be a contract of guaranty. "To constitute a guaranty, there must be a principal debtor or obligor." "Without a principal debt there can be no guaranty."
The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral. The fact that both contracts are written on the same paper or instrument does not affect the independence of separateness of the one from the other. 24 Am. Jur. 875-6, § 4.
Id. at 255, 135 P.2d 95. See also B & D Leasing Co. v. Ager, 50 Wash.App. 299, 306, 748 P.2d 652 (1988).
Riviera's response to this issue of law is to simply assert the Guaranty is unenforceable. Riviera's interpretation of the Guaranty to have the tenant, in effect, guaranty an obligation for which it was already responsible leads to a commercially unreasonable construction, which we reject.[3] It is common practice for landlords to secure personal guaranties by corporate officers of corporate leases, particularly where the financial status of the corporation is questionable or substantial tenant improvements are made.
Courts in other jurisdictions have also rejected the disposition Riviera suggests. In Dann v. Team Bank, 788 S.W.2d 182 (Tex. App.1990), the Texas Court of Appeals upheld the personal liability of a signatory on a guaranty agreement under circumstances similar to the case at bar. In Dann, a corporate president appealed the entry of a summary judgment against her based upon her signature on a guaranty for a bank's loan to her corporation. Dann added her title when she signed the guaranty. The Texas Court of Appeals found Dann personally liable on the guaranty reasoning as follows:
A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform.... [G]uaranty [is] defined as an undertaking by one to another to answer for the payment of a debt, incurred by a named person, in case of the failure of that person to pay. For there to be a guarantor, there must be a primary obligation on the part of another, the performance of which is guaranteed. Under normal circumstances, a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be *599 the sole party liable thereunder. To circumvent this result, the corporate designations appearing after signatures on documents of this type are considered to be only descriptio personae. Descriptio personae is the use of a word or phrase merely to identify or point out the person intended and not as an intimation that the language in connection with which it occurs is to apply to him only in the technical character which might appear to be indicated by the word.
Dann, 788 S.W.2d at 183-84 (emphasis added, citations omitted). The court further stated:
To treat Cetcon [the borrower] as the guarantor as well as the borrower would negate the purpose of the guaranty. American Petrofina, 519 S.W.2d at 487; see also Kordick v. Merchants Nat'l Bank & Trust Co., 496 N.E.2d 119, 124 (Ind.App. 1986) (it would be meaningless for the corporation to guarantee its own debt because it would add nothing to the existing obligations); Roy v. Davidson Equip., Inc., 423 So.2d 496, 497 (Fla.App.1982) ("For a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless."). We conclude, therefore, that Dann signed the guaranty in her individual capacity and that the designation of her corporate capacity was merely descriptio personae. In other words, the addition of the words "president, Cetcon Corporation" to Dann's signature was merely to identify Dann and was not intended to apply in a technical character. Neeley, 623 S.W.2d at 948; American Petrofina, 519 S.W.2d at 487.
Dann, 788 S.W.2d at 184. See also American Management Corp. v. Dunlap, 784 F.Supp. 1245, 1253 (N.D.Miss.1992) (granting partial summary judgment against alleged guarantor, who signed the guaranty agreement adding his title, finding him personally liable and noting: "A contract of guaranty, like every other contract is made by the mutual assent of the parties. When the contract is signed by the guarantor at the other party's request, mutual assent is proved." (citations omitted)); Rockwell Int'l Corp. v. Riddick, 633 F.Supp. 276, 280 (N.D.Ga.1986) (provisions in the guaranty that differentiate between the guarantor and the borrower negate contention that the signer signed in his representative capacity). As a matter of law, a party to a contract cannot guarantee its own contract. In the commercial setting, it would make no sense for Tony Maroni's to guarantee obligations it had already promised to undertake in the Lease.
Riviera is an experienced business person with prior experience in commercial leasing who dealt directly with Wilson in securing the Lease. There is no evidence or assertion of any improper conduct by Wilson. Given the commercial sophistication of the parties, the circumstances under which the Guaranty was entered into, and the nature of the Guaranty, a commercially reasonable approach to this case requires us to find the addition of "President" to Riviera's signature was merely descriptio personae and to hold Riviera personally liable under the Guaranty.

CONCLUSION
Although the descriptive language in Riviera's signature on the Guaranty created an ambiguity and our commercially reasonable construction of the Guaranty resolved the ambiguity by imposing personal liability on Riviera, we note the issue in this case could have been easily avoided by careful attention to the language of the Guaranty and communication between the parties. If Riviera did not intend personal liability, he should have said so. Wilson could have pressed Riviera to sign only in his individual capacity or modified its Guaranty to clearly specify Riviera as the Guarantor. As between commercial entities, we decline to write agreements for such entities they did not negotiate, but where they create ambiguities by their imprecise drafting, we will construe their agreements in a commercially reasonable manner to resolve any ambiguities.
We affirm the trial court's judgment in favor of Wilson, but deny attorney fees on appeal.[4]
*600 DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON and ALEXANDER, JJ., concur.
MADSEN, Justice, concurring.
I agree with the result reached by the majority, but write separately because the majority offers inconsistent analyses which may generate confusion regarding guaranties in commercial settings.
The majority discusses our cases which explain that where the language of a contract does not otherwise indicate the signer's capacity, a signature with descriptive language is presumed to be only descriptive of the signer. However, extrinsic evidence is admissible to establish mutual intent of the parties that the signature is in a representative capacity and the signer is therefore not personally bound by the contract. Majority at 594-595; see Griffin v. Union Sav. & Trust Co., 86 Wash. 605, 609-11, 150 P. 1128 (1915); Hansen v. Lindell, 14 Wash.2d 643, 649-54, 129 P.2d 234 (1942) (the presumption that the additional words are descriptive only may be refuted by other facts). The burden of proof is on the party seeking to change the prima facie character of the contract. Griffin, 86 Wash. at 610, 150 P. 1128.
However, the majority does not use these principles to resolve the case. It does not discuss whether extrinsic evidence as to mutual intent has been offered or whether the burden of proof has been met. I would conclude that Mr. Riviera has failed to satisfy his burden of proving that the parties' objective mutual intent was that he signed on behalf of Tony Maroni's. Therefore, the word "President" following his signature is descriptive only and he is personally liable. The majority need go no further.
The majority also concludes, however, that if any ambiguity in this case has been injected into the contract as a result of Mr. Riviera adding "President" after his name, this ambiguity should be construed against him as the "drafter." This reasoning bypasses our cases stating the principle that if it is not otherwise clear from the face of the contract, a signature with a representative designation is prima facie descriptive of the person only. The inquiry should be whether extrinsic evidence has been offered which resolves the ambiguity. If there is insufficient evidence to overcome the prima facie character of the signature as descriptive only, that should end the inquiry. The presumption stands. The rule of construction employed by the majority is unnecessary and inconsistent with the analytical framework it discusses at pages 594-595.
Moreover, the majority states that as a matter of law Tony Maroni's cannot act as guarantor of its own indebtedness, and that to give effect to the guaranty Mr. Riviera must be deemed to have signed in an individual capacity. This principle of law, if true, obviates the need for any of the rest of the majority's analysis. I question, though, whether the rule should be applied as an absolute principle for construing commercial contracts without considering contract terms or evidence which may be to the contrary. I also note that in Puget Sound Nat'l Bank v. Selivanoff, 9 Wash.App. 676, 514 P.2d 175, 70 A.L.R.3d 1270 (1973), such an absolute rule would have required finding the wife individually bound. I find nothing in Selivanoff which substantiates the majority's suggestion that the case involved circumstances more akin to a consumer transaction than a commercial transaction and thus required special protection of an "innocent" party.
Finally, the majority's "commercially reasonable approach" to this case, majority at 599, concerns me. By failing to examine the evidence in this case to determine whether Mr. Riviera has overcome the presumption that the representative designation "President" following his signature is descriptive only, and instead substituting an assessment which includes the commercial sophistication *601 of the parties, the circumstances under which a guaranty is entered into, and the nature of a guaranty, the majority has significantly changed the law in this area. In my view, such an assessment second-guesses the agreement which the parties have entered, and permits, for example, a reviewing court to assess the "sophistication" of the parties rather than evidence of the parties' objective mutual intent.
I would hold that Mr. Riviera, as the party challenging the prima facie character of his signature as descriptive only, has failed to meet his burden of proof. I concur in the result.
GUY and SANDERS, JJ., concur.
NOTES
[1] The Court of Appeals enforced the guaranty as to the community property and the husband personally, even though he signed in his representative capacity as corporate president. Key to the Court of Appeals' disposition of that case was the bank's awareness of a problem as evidenced by the clandestine altering of the Selivanoffs' signatures. Unstated, but apparent from the decision, is the Court of Appeals' view the bank acted improperly in secretly changing the signatures. Furthermore, Mrs. Selivanoff was an innocent victim, not a party to the negotiations nor present at the transaction. She was misinformed by her husband's advice upon which she relied in signing. Under these circumstances, placing the burden of inquiry on the more sophisticated party to the transaction who drafted the guaranty agreement does not seem unjust, especially where that party appears to have acted improperly and to the detriment of a less sophisticated party. The circumstances surrounding Mrs. Selivanoff's signature may have had more in common with a consumer transaction than the commercial transaction present here and were, therefore, uniquely compelling. Thus, the disposition of that case should be limited to its unique circumstances. Despite Selivanoff, we adhere to the view generally, that courts must find the language added to the signature creates an ambiguity as to personal liability before parol evidence may be introduced and judicial construction of the guaranty undertaken; keeping in mind the added language is presumed descriptive only, with the burden of proof on the party asserting otherwise. See Griffin, 86 Wash. at 610, 150 P. 1128.
[2] Because Tony Maroni's was a multi-location pizza pick up and delivery business, its familiarity with commercial leases can be assumed. Riviera does not contend that he or Tony Maroni's did not understand the purpose of guaranties in the commercial setting, nor does he suggest such a disproportionality of bargaining power that the Lease was, in effect, an agreement of adhesion. Indeed, Tony Maroni's and Riviera bargained for a five-year lease of the premises and received $33,520 in tenant improvements for the premises.
[3] Riviera's contention that the record establishes Wilson sometimes accepts tenants as their own guarantors (Supplemental Br. of Pet'r at 14-15) is without merit. To support his contention, he asserts the successors to the premises in question in this case signed both the lease and the guaranty agreement as individuals guaranteeing their own performance. Id. However, Wilson is clearly securing multiple parties as guarantors for the performance of each of the other parties mentioned. See Clerk's Papers at 123, 137, 149.
[4] Wilson includes a request for attorney fees and costs in the last line of the conclusion of its Supplemental Brief, but does not include a separate section in its brief devoted to the fees issue as required by RAP 18.1(b). This requirement is mandatory. Phillips Bldg. Co. v. An, 81 Wash. App. 696, 705, 915 P.2d 1146 (1996). The rule requires more than a bald request for attorney fees on appeal. Thweatt v. Hommel, 67 Wash. App. 135, 148, 834 P.2d 1058, review denied, 120 Wash.2d 1016, 844 P.2d 436 (1992). Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs. Austin v. U.S. Bank of Wash., 73 Wash.App. 293, 313, 869 P.2d 404, review denied, 124 Wash.2d 1015, 880 P.2d 1005 (1994). As Wilson fails to fulfill these requirements, attorney fees on appeal are denied.