

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2015 APR 27 AM 10: 49

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71454-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH FRANCIS WILLIAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 27, 2015 |
| | ) | |

VERELLEN, A.C.J. — On the second day of trial, Joseph Williams pleaded guilty to residential burglary, theft, criminal trespass, trafficking in stolen property, and possession of stolen property. He later moved to withdraw his guilty plea, claiming that he had accepted an earlier, more favorable plea offer and that he was denied effective assistance of counsel during plea negotiations. After conducting an evidentiary hearing, the trial court rejected Williams' contentions. Because substantial evidence supports the trial court's decision, we affirm.

## FACTS

On June 21, 2010, the State charged Williams with two counts of residential burglary, two counts of trafficking in stolen property in the first degree, and one count of possession of stolen property in the third degree. The charges were based in part on the accounts of two eyewitnesses who identified Williams as the suspected burglar.

*First Plea Offer*

Williams was initially represented by public defender Harold Palmer. Palmer discussed the charges with deputy prosecutor Mafe Rajul, who was handling cases involving "high-impact" burglary defendants "believed to be responsible for far more burglaries than they were charged with or confessed to, or who had substantial criminal history."[1]

After reviewing Williams' prior criminal history, which included a minimum of 10 felony points, Rajul communicated a plea offer to Palmer. In exchange for Williams' guilty plea to the remaining counts and agreement not to request a drug offender sentencing alternative (DOSA), the State agreed to drop one of the trafficking counts and to recommend a low end standard range sentence of 63 months.

Palmer believed that the offer was "harsh" and discussed the pros and cons of pleading guilty with Williams.[2] Williams did not accept the offer and decided to retain private counsel Kris Jensen.

*Second Plea Offer*

Jensen began representing Williams in February 2011. Jensen was aware of the State's first offer and negotiated a more favorable plea agreement with deputy prosecutor Suzanne Love. Under the terms of the offer, the State agreed to recommend a DOSA sentence of 36.75 months in prison and 36.75 months of supervision in exchange for Williams' guilty plea to the current charges and an additional charge of theft in the second degree. Jensen felt strongly that Williams had a

---

[1] Clerk's Papers (CP) at 313.
[2] Report of Proceedings (RP) (Oct. 23, 2013) at 126.

weak case and that he would benefit from a DOSA sentence.

Williams rejected the offer and told Jensen that he wanted to go to trial. Williams insisted that "I wasn't there at all, I didn't do this."[3] Because Williams rejected the offer and was unable to pay Jensen's trial fee, Jensen withdrew in early April 2011. The court then reappointed Palmer as Williams' counsel.

### Third Plea Offer

Palmer was aware of the second plea offer when he resumed his representation of Williams. Based on the prosecutor's office policy, Palmer informed Williams that the second plea offer was no longer available. Williams instructed Palmer in writing not to discuss plea offers with him and told him to resign if he was not "100 percent onboard" with the agenda.[4] Palmer assigned an investigator to the case and began preparing for trial. Palmer denied advising Williams that even though the second plea offer was still available, he should reject it.

Trial began on August 4, 2011. The trial court granted a recess to permit defense counsel to make final trial preparations. Palmer informed the court that he would "get any final offers to resolve this case communicated to Mr. Williams."[5] When court reconvened later that afternoon, neither party indicated possible plea negotiations. The court granted the State's motion to amend the information to add charges of criminal trespass in the first degree, theft in the second degree, and theft in the third degree.

---

[3] Id. at 42.

[4] Id. at 161.

[5] CP at 31.

3

On the second day of trial, Nancy Lawrence identified Williams as the person she observed walking out of her open garage and driving off in a white Oldsmobile. Just before the next witness was to take the stand, defense counsel asked for a recess and informed the court:

> Mr. Williams is asking that I tell the Court and that I tell the prosecutor in this case that he is interested in pleading guilty. What he is interested in pleading guilty to, I don't know, but I want to have a brief discussion with the prosecutor and Mr. Williams to see if we could finish this case today.[6]

During the recess, deputy prosecutor Love made a third plea offer. In exchange for Williams' guilty plea to the charged offenses, the State agreed that Williams could recommend any sentence that he wished, including a DOSA. The State would recommend an exceptional sentence.

Palmer discussed the plea offer in detail with Williams and answered all of his questions. Williams did not express any confusion about the nature of the offer. Palmer explained that the primary advantage of the offer for Williams was the ability to recommend a DOSA.

After the recess, Palmer informed the court that the parties had reached a resolution on the plea offer and needed time to prepare the paperwork. The court advised the parties that the witnesses would remain available and that the trial would resume if the deal fell through.

When the parties returned to court, the deputy prosecutor reviewed the statement of defendant on plea of guilty with Williams on the record. The deputy prosecutor identified the eight charged offenses, and Williams acknowledged that he

---

[6] CP at 157-58.

understood he was pleading guilty to the eight offenses as charged. Williams also stated that he understood the specific rights that he was giving up by pleading guilty as charged, the possible sentences, the consequences of a DOSA, the State's recommendation for an exceptional sentence, and the fact that the judge was not bound by the sentence recommendations. At one point, Williams interrupted the proceeding and asked for a specific change in the language of one of the factual admissions on the plea statements. Williams conceded that he had had enough time to discuss the plea with his attorney and that no one had made any threats or promises to obtain his agreement.

The trial court also conducted a colloquy with Williams. Williams repeatedly stated that he understood the consequences of the plea. He also acknowledged that even though his attorney had drafted the factual recitations on the plea documents, he was adopting them as his own. Williams affirmed that he had no questions "about the process or anything about what we're doing now."[7]

On September 9, 2011, the court imposed an 84-month standard range sentence.

Williams appealed, challenging the imposition of legal financial obligations. He eventually withdrew the appeal, and the mandate issued on June 22, 2012.[8]

On May 28, 2013, Williams moved to withdraw his guilty plea under CrR 7.8, alleging ineffective assistance of counsel during the plea process. He maintained that

---

[7] CP at 177.
[8] See State v. Williams, No. 67876-1.

5

he believed he was accepting the more favorable second plea offer when he agreed to plead.

The trial court conducted an evidentiary hearing on October 23, 2013, at which Palmer, Jensen, and the deputy prosecutors involved in the plea negotiations testified. Williams, who was represented by retained counsel, did not testify.

On October 31, 2013, the trial court issued a lengthy memorandum decision denying Williams' motion to withdraw his guilty plea. The court found that no evidence supported Williams' claim that he thought he was accepting the State's second plea offer rather than the third plea offer. The court also concluded that Williams had failed to demonstrate that he was denied effective assistance of counsel during plea negotiations and trial.

## ANALYSIS

### Withdrawal of Guilty Plea

Under CrR 4.2(f), the trial court "shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." Where, as here, a criminal defendant moves to withdraw his guilty plea after judgment, the motion must also meet the requirements of CrR 7.8(b).[9] We review the trial court's decision on a motion to withdraw a guilty plea for an abuse of discretion.[10]

Williams contends that the State's second plea offer was still open after trial commenced and that he accepted that offer when he interrupted the trial and informed

---

[9] CrR 4.2(f); State v. Lamb, 175 Wn.2d 121, 128, 285 P.3d 27 (2012).
[10] Lamb, 175 Wn.2d at 127.

the court that he was interested in pleading guilty. Williams argues that his acceptance therefore created a binding contract with the State for the second plea offer. He maintains that the State then "replaced" the offer he accepted "with an offer that didn't exist," thereby rendering his guilty plea to the third plea offer involuntary.[11]

Williams' arguments rest on the faulty assertions that he never rejected the second plea offer and that the second plea offer therefore remained available even after trial started. Nothing in the record supports these contentions.

Kris Jensen testified that after he negotiated the second plea offer, he discussed the details of the offer at length with Williams, who unambiguously rejected the offer and informed Jensen that he wanted to go to trial. Williams' rejection of the second plea offer was the only reason that Jensen withdrew. When Hal Palmer was reappointed to represent Williams, he knew about the second plea offer, but Williams expressly informed him to prepare for trial and not discuss plea offers. Substantial evidence supports the trial court's finding that Williams "specifically rejected" the first two plea offers.[12] To the extent that Williams is disputing the testimony presented at trial, his challenge involves issues of credibility that this court cannot review.[13]

Williams' contention that he formed a binding contract by accepting the plea offer during trial is also without merit. On the second day of trial, defense counsel informed the trial court that Williams was interested in pleading guilty. Williams claims that this constituted his acceptance of the second plea offer. But Williams does not identify any

---

[11] Br. of App. at 23.

[12] CP at 255.

[13] See State v. Camarillo, 115 Wn.2d 60, 794 P.2d 850 (1990) (appellate court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence).

7

evidence in the record suggesting that he communicated his belief that the second plea offer was still open or that the communication of an interest in pleading guilty constituted his acceptance of the plea offer.

Washington follows the "objective manifestation test" for contract formation.[14] Even if a plea offer had been available, Williams' unexpressed, subjective intent was insufficient to constitute an acceptance or create a binding contract.[15]

The trial court did not abuse its discretion in denying withdrawal of the guilty plea based on Williams' claim that he accepted the second plea offer.

*Ineffective Assistance of Counsel*

Williams also contends that he should be permitted to withdraw his guilty plea because he was denied effective assistance during plea negotiations and trial. To prevail on a claim of ineffective assistance, Williams must establish both (1) that his attorney's representation fell below an objective standard of reasonableness, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[16]

A criminal defendant's constitutional right to effective assistance of counsel extends to the plea-bargaining process.[17] "Effective assistance of counsel includes assisting the defendant in making an informed decision as to whether to plead guilty or

---

[14] Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 699, 952 P.2d 590 (1998).

[15] See Lietz v. Hansen Law Offices, PSC, 166 Wn. App. 571, 585, 271 P.3d 899 (2012).

[16] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[17] Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012); Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399, 1409, 182 L. Ed. 2d 379 (2012).

to proceed to trial."[18] Defense counsel's obligations may include communicating actual offers, discussing tentative plea negotiations, and discussing the strengths and weaknesses of the defendant's case so that the defendant knows what to expect and can make an informed decision on whether to plead guilty.[19] In the context of a claim that counsel's ineffective assistance caused the defendant to reject a plea offer, a defendant demonstrates prejudice by showing that there is a reasonable probability he or she would have accepted the offer absent counsel's ineffective assistance.[20]

We review claims of ineffective assistance of counsel de novo.[21]

Williams contends that Hal Palmer's initial representation was deficient because he failed to conduct an investigation, failed to obtain the State's first plea offer in writing, and failed to advise him whether he should accept or reject the offer.

Palmer acknowledged that he had not yet begun an investigation when he communicated the State's first plea offer to Palmer. But the case had not yet been set for trial. When discussing the plea offer with Williams, Palmer reviewed the strength of the State's evidence, including the eyewitness accounts, the "pros and cons" of the plea agreement, and offered a general assessment of the case.[22] Williams does not identify what investigation Palmer should have undertaken at this stage of the proceeding or allege that the investigation would have affected Palmer's review of the plea offer. Nor has Williams cited any authority supporting his claim that Palmer was obligated to

---

[18] State v. A.N.J., 168 Wn.2d 91, 111, 225 P.3d 956 (2010).

[19] State v. James, 48 Wn. App. 353, 362, 739 P.2d 1161 (1987).

[20] Lafler, 132 S. Ct. at 1385; Frye, 132 S. Ct. at 1409.

[21] A.N.J., 168 Wn.2d 91 at 109.

[22] RP (Oct. 23, 2013) at 131.

obtain plea offers in writing or explicitly advise a defendant whether to accept or reject a plea offer.

Under the circumstances, Williams has not demonstrated that Palmer's representation in conjunction with the first plea offer was deficient in any manner, or that he would have accepted the first plea offer absent the alleged deficient performance.

Williams next contends that Kris Jensen's representation was constitutionally deficient because he did not obtain the second plea offer in writing and "didn't want to go to trial."[23] But, as indicated, Williams cites no authority requiring counsel to obtain a plea offer in writing. The evidence established that Jensen obtained a more favorable plea agreement, presented it to Williams, and urged Williams to accept it. Williams rejected the offer and insisted on going to trial. Jensen then withdrew because Williams was unable to pay Jensen's trial fee. Williams fails to demonstrate either deficient performance or resulting prejudice.

Williams contends that Palmer's performance after reappointment was also deficient. In particular, he alleges that Palmer should have objected to the State's last-minute attempt to admit his shoes into evidence, that he should have moved to suppress evidence seized from the white Oldsmobile on the basis of a faulty search warrant, and that he should have moved to suppress Nancy Lawrence's allegedly suggestive photomontage identification. Williams provides no meaningful legal argument to support these conclusory allegations.

Palmer testified that, after consulting with Williams, he made a strategic decision not to object to the shoes until the State offered them at trial. Palmer noted that

---

[23] Br. of Appellant at 30.

because the State had only a blurry photograph of a footprint at the scene of one of the burglaries, the shoe evidence could potentially support Williams' defense. Palmer also explained that he decided not to seek suppression of the items taken from the Oldsmobile or the photomontage because successful motions would not have significantly undermined the strength of the State's case.

Because Williams has not made any showing that counsel's strategic choices were unreasonable, his allegations will not support a claim of ineffective assistance.[24] Nor has Williams made any showing that counsel's strategic choices affected his decision to plead guilty.

Finally, Williams contends that Palmer was deficient for failing to challenge the amended information. He contends that the two residential burglary counts and two corresponding theft counts involved "the same time and location, and were the same act" and therefore violated double jeopardy.[25]

But double jeopardy is not implicated merely because two offenses arise out of the same incident. The burglary antimerger statute, RCW 9A.52.050, provides that burglary and any other crime committed during the burglary may be punished separately, even if the crimes encompass the same criminal conduct.[26]

Because Williams pleaded guilty to burglary and theft, the trial court had discretion to apply the burglary antimerger statute and punish the burglary separate

---

[24] See State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (legitimate trial strategy cannot form the basis for a claim of ineffective assistance of counsel).

[25] Br. of Appellant at 34.

[26] State v. Lessley, 118 Wn.2d 773, 781-82, 827 P.2d 996 (1992).

from the theft counts. Because the amended information did not involve double jeopardy, counsel's failure to object did not constitute deficient performance.

Many of Williams' factual allegations rest on matters that are outside the record. We therefore cannot consider them on direct appeal.[27]

Affirmed.

WE CONCUR:

_____

_____

_____

---

[27] McFarland, 127 Wn.2d at 337-38.